et al. Arguments not to exceed 15 minutes per side. Mr. Hawley for the appellant. May it please the Court, I'm Michael Hawley and I represent Mr. Morrow in this appeal. Are you reserving time, Mr.? Yes, Your Honor, I would like to reserve five minutes. Okay. Thank you. Now, when Mr. Morrow was 17 years old, he chased a truck down the highway, shooting wildly. One of those bullets hit the truck and very tragically went through the driver's side door and that fatally wounded the driver. Now, Mr. Morrow, though he was 17, was tried as an adult, and at the bench trial, he was not found guilty of either first-degree premeditated murder, second-degree intentional murder, voluntary or involuntary manslaughter, although he was obviously guilty of one of those and should have been punished. But what did happen is Mr. Morrow was sentenced to life based on a felony murder theory, based on the idea that he was attempting to kidnap the people in the truck when shooting at them. Now, this life sentence, based on that theory of attempt to kidnap, it's unfair and unjust, and that's because the state's proof of— Unfair and unjust? Is that a legal claim or— No, Your Honor. No, Your Honor. Well, tell me what the legal claim is. It adds up. Our best claim is the claim that his lawyer was constitutionally ineffective for failing to call the witness, a witness with personal knowledge who saw the U-turn that was called the attempt to kidnap, and would have contradicted the slender read upon which the state's kidnapping claim rested. And in addition to that, the state's case for attempt to kidnapping—well, it was a slender read. It was a very weak case because they did not have proof of the mens rea required for an attempt to kidnap. Before we get to the procedural posture of this case, one thing that I'm struggling with trying to figure out is the theme that you've repeated this morning, the slender read. You're talking about the failure to interview and then call Burks, the driver of one of the cars, right? Yes, Your Honor. And that person allegedly would have testified that there weren't three people outside the car trying to impede Hannah from driving back onto the highway. That's right, Your Honor, and that's what he did testify. What I'm trying to figure out is why is that a slender read? Why—I'm trying to figure out how it's even that important to the case in this sense. You've got these three cars going down the road. One ends up in front of the truck, two end up behind it. They clearly box it in. It doesn't seem to me there's any dispute about that. And your client is standing in front of the truck, pointing his gun at the car, saying, We got him now. I mean, it seems to me that at that point the restraint of the occupants of that truck is— or at least the attempted restraint of the occupants of that truck is complete, ignoring what happened as she evades them and goes across the median and then back out. Your Honor, without an effort from the cars from behind, there actually is no proof of boxing in. Now, that's the state's theory. That's what they wrote in the indictment. Just if we take the two cars, the two trailing cars out of it for a second, Mr. Morrow's actions, chasing someone around with a gun, is not an attempted kidnap. I agree that if he's driving down the highway, as you say, firing wildly, which doesn't seem to be supported by the record, seemed to be pretty intentionally aiming at the truck. He was trying to hit the truck. He's aiming at the truck, and he's a pretty good shot. So he goes around the truck, and he stops in the road. So right at that point, I'm just trying to figure out why is there not the restraint or attempted restraint necessary for kidnapping, even if the person isn't boxed in or both lanes of the road are not stopped. I mean, you're not going to drive by somebody that has a gun pointing at you, presumably. Well, that's right. The gun is always blocking off one avenue of flight. The gun, even when they stop in front, it's really no different than when they're behind chasing the truck. The guy with the gun is always restricting the truck's path. And when the truck stops, obviously the truck had to stop because they're changing drivers. Now, at that point, the people in the car didn't even know what had happened, and they may think, well, the truck's stopping because they're going to pull in this parking lot and have a fight or something. I don't know. But they stop because the truck stops, and they continue their chase. It's just like if you chase someone around in a square. You're always chasing them around, and you're always blocking off one avenue of flight. When you're chasing them, you haven't kidnapped them or attempted to kidnap them. When you actually succeed in stopping them, is there a sufficient restraint at that point to factually make him guilty, independent of what happened when they're driving through the granary? I don't think so, Your Honor. I did not find any cases. The closest thing under Tennessee law is cases where people are convicted of a kidnap and an assault at the same time. In those cases, it's under this doctrine of state versus Anthony. In those cases, they describe how the kidnapping has to add something to it other than just the restraint that's part of the crime. There's some cases like that, rape and kidnapping at the same time too, because obviously if someone drags a victim out of a car and rapes them or something, there's a restriction in travel and all that. In any violent crime, pretty much, there's going to be some restriction in the person's movements. And so state versus Anthony is where Tennessee has addressed that problem. I don't want you to spend all your time answering that question, so unless somebody else has a question about that, let's move on to you've described your IAC claim as the most substantial claim here. It appears to have been procedurally defaulted, so we then have to go to cause and prejudice. Do you agree so far? Yes, Your Honor, definitely. So how do you establish cause and prejudice here? Well, under Martinez, if post-conviction counsel was ineffective for failing to raise the claim, then cause and prejudice is a substantial claim, of course. Cause and prejudice is established. If it's a substantial claim? Yes, Your Honor. Which loops us right back to really what difference does Burke make? Yes. Well, I think the whole case is always going to loop back to, is Octavius Burke's testimony important? Because if there's a reasonable possibility it would have made a difference in the trial, then I really think it's a winning Strickland claim because, you know, there was no excuse for trial counsel not to bother to pick up the phone and call this man and find out. You know, you gave a statement to police. It looks kind of good. You know, what would you say? And you should have had him there. So I think it always loops back to the significance of Mr. Burke's because, as was cause and prejudice question, you know, post-conviction counsel should have sat down and looked at the file just like I did and said, oh, look, there's an obvious error that trial counsel made, and he should have pled this, and he should have brought Octavius Burke to the state post-conviction hearing. Well, let me jump in. I'm picking up on what Judge McKeague said. Burke's told the police shortly after the incident that the cars in front of him stopped for a minute. All right? So had he been called, if he hadn't, and even at the Martinez hearing, he said he saw that Darden's car was stopped in front of the truck on the highway. All right? Had he testified, he would have supported Hannah Westerman's testimony that the defendants blocked her car and stopped her for a short period. All right? He would have impeached her testimony that subsequently three men actually got out of the car. All right? But he would have conceded that the car was stopped. And the state court of appeals, when they recite the facts on page 13, they don't mention anything about three men getting out of the car and blocking the way. They just recite that the light blue car came to a complete stop in the middle of the road in front of Westerman's car, Westerman's truck, and Mrs. Westerman, Hannah, saw a black man sitting in the car pointing a gun. All right? And then she has to turn around and go another way. They don't even mention this Hannah Westerman's testimony that subsequently three men got out of the car and stopped it. That's not how the TCCA describes it, Your Honor. It doesn't describe it in that detail. But the TCCA does say, however, when she tried to exit the parking lot, the cars had blocked her access to the paved driveway, so she drove through another ditch to exit the parking lot. But Brooks doesn't contramand that. That's what he is contramanding. The question is whether the three guys are outside. Well, the only way that Bell's car blocks the driveway is by his occupants getting out. That's all that's ever described in the record, all that Hannah Westerman knows. The car's blocking. What if people get in or out? Hannah Westerman, everyone just says the car stopped in the proper lane of traffic and that the men got out on their feet to block the driveway. I think it's a subtle difference in just the wording that the TCCA used, but they're referring to the effort to box in from behind. And the only movement from Bell's car to box in is the people getting out. Otherwise, it's just Bell's car coming up and stopping in its lane of traffic, as anyone would if there's something happening like this in front of you. If she goes off the road and through the ditch and into this parking lot, I suppose if there was a 10-car-wide exit to go out back onto the highway, one could say that one car parked over on the side of that isn't in any way blocking the access that she had to go back onto the road. But we don't know that, or you may know that. We don't know that. Was it just a one-car exit to go back out, in which case it would make no difference whether the men were inside or outside the car, or is it wider? There are some photos in the record, and unfortunately they're black and white. They're a little hard to see, but there's actually three driveways. Part of the defendant's argument at the trial was, this is no place to try and box someone in. They stopped right in front of a two-lane highway with a very long parking lot with three exits, three driveways, and Morrow's car was down at the front exit. The Westermans turned around down here in the middle, and then this Bell car and the people outside were blocking one of the other two. But if she wasn't blocked, why did she have to go through the ditch again to get back on the highway? If you look at the photos, it was hardly a ditch, and it was a 4x4 truck. It really is a judgment call looking at those ditches. It really wasn't much of a ditch. You're trying to ascribe some pretty logical thinking to a woman who's just been stopped by three cars and her husband's been shot. Well, sure. It's just an expedient way to get back, I think. According to the testimony of Mr. Burks and everyone but Ms. Westerman, the cars from behind, there was no effort from behind. The cars just came up in their lane of traffic, stopped. She went back, and then Mr. Morrow continued firing. All right. Your light is on. You'll have your rebuttal. Thank you. Thank you. May it please the Court, Andrew Coulomb on behalf of the respondents. Your Honors are absolutely right that the question of whether someone got out of a car after Westerman's truck had been stopped is immaterial. The kidnapping at this point had been certainly, or the attempted kidnapping, had certainly been affected as they got the truck stopped. They boxed in the truck and stopped it on the highway. So is it clear under Tennessee law that merely having effectuated the stop of the car, regardless of whether there were other avenues of escape, which she clearly had, that that restraint or attempted restraint constitutes kidnapping under Tennessee law? Yes, it constituted substantial interference with their liberty in that they stopped her from the front. The cars were behind her so she could not reverse to safety. The only thing she could do, and this was unrebutted, was that she had to go through a ditch to get away. The briefing talks about her being charged and convicted of attempting to interfere with the liberty of Hannah Westerman, and I'm curious about that. Was that the theory of the state? Because it seems odd that you would be claiming that they were trying to interfere with the passenger as opposed to the driver, who's the fellow that they were mad at. I believe it was interfering with both of them, both Westermans, not just Mrs. Westerman. Not just her. That's correct, Your Honor. Thank you. The state didn't have to prove kidnapping. It's attempted kidnapping. It's the felony, right? That's correct, Your Honor. There's a big difference here. I don't think kidnapping occurred, but the boxing, the argument, is that it at least shows attempt to kidnap. That's correct, Your Honor. They weren't successful. She was able to get the truck away, but the evidence was certainly sufficient, and it was a reasonable application of Jackson to say that... And that's all a matter of state law, that we're really not in a position to tell the state courts that they interpreted the Tennessee statutes incorrectly, are we? That's really what we defer to, isn't it? That's true. There is that deference there, Your Honor. Tennessee law interprets their own law? That's correct. Attempted kidnapping in Michigan may be a lot different, but what it is in Tennessee, it's decided by Tennessee courts. That's correct, Your Honor. And the evidence was certainly sufficient here to support that as interpreted by the Tennessee state courts. It was a reasonable application of Jackson to... The appellant's making two arguments. One is the sufficiency of the evidence, and assuming we accept that under Tennessee law, a brief, momentary stopping of the vehicle qualifies as attempted kidnapping. But the appellant's also making the argument that the trier of fact should have been able to weigh whether or not there was also this three men jumping out, because clearly if three men jump out, it's a simple case. Not only have they stopped her, they look like they're trying to shoot her, and then she has to turn around and go another way.  Do you agree? That could strengthen the case. I wouldn't say it would make it much more compelling. It makes it more compelling to me, and a judge decided this. So the appellant is saying that that testimony would have absolutely been refuted by Burks had he been called, and the trier of fact weighing that might not have felt that in a close call they were going to go all the way and turn this into felony murder. And that's why it was constitutionally ineffective for not calling Burks. Well, first I'd say it wasn't a close call. It was not a close call, even if you take away whether anyone got out of any of the cars or not, that the fact that the petitioner here, he instructed the driver to catch up to the Westermans, he instructed them to pass the Westermans, he shot at the Westermans all the way from behind to the side. When the car stopped in the middle of the road in front of them, he leaned out the window and said, I've got you now, and shot at them there, with his friends now stopped behind the truck. So the truck was effectively stopped both from the front and the back in a two-lane highway. And the only thing that Mrs. Westerman could do at that point was to go through a ditch into a parking lot to try to escape back to Kentucky to get her husband medical attention. Right there, I think, there is a very strong, very compelling case by the state whether or not anyone got in or out of the truck. And in her going into the ditch, they may have photographs of that, but the testimony was unrebutted that by going into that ditch, the truck shook very hard. Even the petitioner admitted that. This was not an easy trip for her. Well, the flavor of the briefs, as I understood it, and this will give Mr. Hawley a chance to respond to if I'm missing something here, was that somehow this would impeach Hannah Westerman, not only with respect to what she said about three men getting out of the truck, but somehow impeach her overall testimony. And if I understood that was either said or insinuated, I was having trouble figuring out why that would be true because it seems like the facts of what happened on the highway were undisputed in this case. It was really what happened after she tried to evade them. Am I right about that? I would agree with that, Your Honor. That's corroborated by the various testimony at trial, including the defendants and co-defendants. So at any point, including the cross-examination of Mrs. Westerman, was there any attempt to impeach her testimony prior to what happened when she tried to evade the cars? I don't recall whether there was any significant effort at impeachment. There may have been on small details here and there, but I don't recall anything significant. The facts of the chase are pretty much corroborated by everyone. Why the chase happened, who was in which car, what were the order of the cars, who was shooting and where, all of that is pretty straightforward. The only thing they could try to impeach her about with any significance, and the State submits it isn't significant at all, whether someone got out of the cars after they stopped the truck. But I think what's really significant about this is, let's say Octavius Burks testified at the hearing. No one got out of the cars. There was no time to get out of the cars. And yet, at trial, the petitioner himself testified that Marcus Darden got out of the car. And Marcus Merriweather, who is a co-defendant at trial, testified Marcus Darden got out of a car. He got out of the car while the truck was turning around. This is significant because Marcus Darden was Octavius Burks' passenger. It was the person in his own car who got out. Two of the defendants at trial testified to it. So there is some corroboration that at least one person got out of a car. It was Octavius Burks' own passenger. So the issue as a general matter is immaterial, but even if that were to come out, if that testimony had come out, that impeachment had come out, I don't think there was a reasonable probability that that would have made any difference because we have two of the defendants who had the most incentive to say something, to testify favorably on their behalf, corroborated that at least one person got out of the cars. As a result, Octavius Burks' proposed testimony certainly was not significant. It had no reasonable probability of altering the outcome of the trial where the evidence was very solid and the case was very compelling. As a result, the post-conviction counsel certainly was not ineffective for failing to bring up that claim on post-conviction, and trial counsel was not ineffective for failing to investigate and call Mr. Burks in that regard. If the court is amenable, there was one last issue, which the other side did not bring up but just wanted to address briefly, and that was the defaulted due process equal protection claim. As far as the state has been able to make out, the claim is that the Tennessee Supreme Court violated due process and equal protection by failing to take up its discretionary review of the petitioner's case to apply retroactively an intervening change in state law. This defaulted claim was never raised in state court. The two possible causes for this are, one, Martinez that was raised, but Martinez, as this court has found in Hodges, is limited to defaulted claims of ineffective assistance of trial counsel. So Martinez does not serve to excuse. Secondly, he said he had no opportunity to raise the claim. That is also incorrect. After the Tennessee Supreme Court for the last time denied review in its discretion, the petitioner went back to the post-conviction court. The post-conviction court said, do you have any further claims to raise now that this has happened, that your direct appeal has been finally denied? And he said no. He had the opportunity, so he cannot say that he failed to have an opportunity to raise the claim in state court. That claim is defaulted and was properly dismissed. If there are no further questions, the respondents respectfully request that the judgment of the district court be affirmed. Thank you. Mr. Holley. Mr. Honor, as to your question about other efforts to impeach Hannah Westerman, there was some dispute about what happened back at the gas station that triggered the whole thing, and whether Michael Westerman had shaken the Confederate flag that was flying from the back of his truck at the young man at the gas station. Does it ultimately matter? It doesn't matter a whole lot, Your Honor. I don't believe in our issue. Does it matter at all? Your Honor, it may have mattered in the judge's approach, the judge sitting against the jury, his approach to the whole question of is this premeditated, intentional, voluntary, was he provoked, and things like that. I think everyone felt it was important at the time of trial. Your client won those issues. Apparently so, yeah. Because for whatever reason, he's found not guilty of the more serious. But I don't know how it applied to the attempt at kidnapping, that's all. I was just bringing it up, Your Honor, to say that there were other efforts to impeach her, and there's already some reason to think that she may slant her testimony because she said, well, he couldn't even reach the flag from inside the truck, which was plainly not true. Let me be more specific. With respect to the events on the highway, was there really any factual dispute in this case aside from whether one, two, three, or none got out of the car? I think not really, Your Honor. I think the gist of it was all pretty much the same. Hannah Westerman herself testified. Everyone was in their proper lane of traffic. She said she didn't even have to stop ever completely come to a stop. You conceded earlier in your argument that the truck must have stopped, at least momentarily, because somehow they switched places. I would think so, Your Honor. I've read it carefully five times, and she says that she never actually had to fully stop. But it does seem like, given everyone else's testimony, like I'm saying, it's roughly the same. Everyone's testimony is roughly the same, the shot, the pass, stopping, U-turn. Now, Mr. Klum brought up the fact that someone did get out. Marcus Darden did get out of Octavius Birx's car. That was after the truck was already headed back, and Octavius Birx did testify to that at our federal evidentiary hearing. He testified how the passenger got out of his car when he finally came to a stop, and Mr. Morrow is still taking one more shot, and he's like, whoa, what's going on? And I went through, I think, carefully in my reply brief and explained why there's just no conflict in Mr. Birx's testimony and Mr. Morrow's. No one claimed that Mr. Birx got there in time to help block Ms. Westerman from behind. If anyone helped block her, it could have only been Bill, the second car. And, you know, the state is here saying there's a very compelling case for kidnapping. I think that's far from the truth. I really do think it's a close call. I don't even think, I mean, it's somewhat surprising they even brought this charge, to tell you the truth, Your Honor. It's attempted kidnapping, right? Attempted kidnapping, yes. Okay, but that's much different. It's the offense that's not completed but was attempted. And, I mean, what else would they have been trying to do by stopping their vehicles and trying to get the pickup truck to stop? I mean, they weren't there to shake hands or anything. They were either there to restrain her liberty or maybe to kill her. I mean, what else would have been the intent of trying to stop her? Yes, they were driving and shooting, trying to scare them, maybe trying to hurt them. They were chasing them and shooting them. But they wanted to have that truck stop, the liberty of the occupants, right? Well, Your Honor, what else? I mean, either they're trying to kill them or they're trying to stop them. What else is there? And that's why I say it's wrong for them to be convicted on this attempted kidnapping theory, Your Honor. And it is important that it's an attempt because there's a higher standard of proving. They have to prove a specific intent, and that's usually done through something like the statements. Usually, but you can do it under circumstantial evidence, can't you? You could, but I've cited Tennessee case law where an attempt is... Okay, but as I said, I'm going to defer to Tennessee courts as to what the elements of attempted kidnapping are under the Tennessee statutes. Sure, Your Honor, and there is sufficient evidence. Well, let's just say there is sufficient evidence when we're making this IAC argument, but it's a close call, Your Honor. And I've cited Tennessee case law showing when all you have is vague or ambiguous conduct, it could be either an assault or a kidnapping, a robbery or a kidnapping. That's often found to be not enough, and so I think it's a real sign it was a close call. Thank you. Okay, thank you, Your Honor. Thank you, Mr. Howley. The case will be submitted. Please call the last case.